# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALVIN M. COSTANZA, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-5706** |
| **ACCUTRANS, INC.,**<br>    **Defendant** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is Plaintiff Calvin Costanza, his wife, Stacey Costanza, individually and on behalf of their minor son, Brantley Costanza's (collectively "Plaintiffs") Motion to Remand Proceedings to State Court After Removal by the Defendant Accutrans, Inc. ("Accutrans"), and For Costs and Attorney's Fees.[1] The motion is opposed.[2] On September 20, 2017, Plaintiffs filed a supplemental memorandum in support of their motion to remand,[3] and on September 29, 2017, Accutrans filed its supplemental memorandum in opposition.[4] For the reasons that follow, the Court denies Plaintiffs' motion to remand.

## BACKGROUND[5]

Accutrans provides stevedoring services to various companies operating in the Gulf of Mexico.[6] Mr. Costanza worked as a tankerman for Accutrans from April 2012 until January 2016.[7] His duties included "loading and/or unloading cargo from barges,

---

[1] R. Doc. 8.
[2] R. Doc. 12.
[3] R. Doc. 16.
[4] R. Doc. 20.
[5] All facts stated herein are taken in the light most favorable to Plaintiffs. *See Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (stating that, when evaluating whether seaman status was fraudulently pleaded, "[t]he district court must resolve disputed questions of fact from the pleadings and affidavits in favor of the plaintiff").
[6] R. Doc. 12-1 at 1.
[7] R. Doc. 1-1 at ¶ 3; R. Doc. 16-6; R. Doc. 12-1.

1

mooring the barges to the dock, monitoring the drafts of the barges to make sure they stayed afloat, and pumping out the ballast tanks if the barges took on water during the loading and/or unloading process."[8] When Accutrans assigned Mr. Costanza to a particular barge, he was in charge and given total control over it. For the most part, these barges were "special purpose vessels designed to transport hazardous cargo," and Mr. Costanza was "regularly being exposed to toxic substances."[9] In January 2015, Mr. Costanza was diagnosed with cancer.[10] Plaintiffs allege Mr. Costanza's cancer is a direct result of his "expos[ure] to toxic and carcinogenic substances" "while in the course and scope of his employment."[11]

Plaintiffs filed the instant matter in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana on May 8, 2017 pursuant to the Jones Act, 46 U.S.C. § 688.[12] In their state court petition, Plaintiffs alleged Mr. Costanza "was employed as a seaman within the meaning of the Jones Act and the General Maritime Law."[13] On June 9, 2017, Accutrans removed the action to this Court,[14] contending Plaintiffs may not seek relief under the Jones Act, as Mr. Costanza's seaman status was fraudulently pleaded.[15] Accutrans invoked the jurisdiction of this Court under 28 U.S.C. §§ 1333, 1441, and 1446.[16]

## LEGAL STANDARD

Jones Act cases are generally not removable from state court.[17] However, defendants may "pierce the pleadings to show that the Jones Act claim has been

---

[8] R. Doc. 16 at 1–2.
[9] R. Doc. 16 at 12–13.
[10] R. Doc. 1-1 at ¶ 6.
[11] *Id.* at ¶ 5, 7.
[12] R. Doc. 1-1.
[13] *Id.* at ¶ 4.
[14] R. Doc. 1.
[15] R. Doc. 12.
[16] R. Doc. 1.
[17] *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir.1995).

fraudulently pleaded to prevent removal."[18] A district court may use a "summary judgment-like procedure" to determine whether it may retain jurisdiction or remand the case.[19] In its evaluation, the district court "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." The defendant bears the burden of showing "there is no possibility that plaintiff would be able to establish a cause of action."[20] A denial of remand is permissible when the district court "determines that as a matter of law there was no reasonable basis for predicting that the plaintiff might establish liability."[21]

The pertinent issue in this case is whether Mr. Costanza could possibly establish that he was a Jones Act seaman. To qualify as a seaman under the Jones Act, a plaintiff must demonstrate that (1) his duties "contribute to the function of the vessel or to the accomplishment of its mission," and (2) he has "a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[22] "The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it."[23] "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."[24]

---

[18] *Id.* (citing *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 207 (5th Cir. 1993)).
[19] *Id.* at 176.
[20] *Id.* (quoting *Lackey*, 990 F.2d at 207).
[21] *Id.* (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549, n. 9 (5th Cir. 1981)).
[22] *Id.* at 368 (citation, internal quotation marks, and alteration omitted).
[23] *Id.* at 371.
[24] *Id.* at 370.

**ANALYSIS**

Defendants put forward two arguments in support of their contention that Mr. Costanza does not qualify as a seaman for the purposes of the Jones Act. First, Defendants assert that Mr. Costanza lacks a substantial connection to the vessels on which he worked, arguing he "was not a member of the crew of any vessel," "never sailed with the barges, or went to sea," and "never slept on the barges."[25] Further, Defendants point out that "[w]hen [Mr. Costanza] was working, the tank barges were always moored, unmanned, and had no crew."[26] Second, Accutrans argues Mr. Costanza's work did not involve an identifiable group of vessels, as he "was not permanently assigned to any vessel or fleet of vessels under one ownership or control."[27] In support of this assertion, Accutrans submitted the deposition of Toni Macksey, Accutrans' vice president of administration and compliance, attaching to it a detailed list of each of the vessels upon which Mr. Costanza worked, the work performed, and the number of hours spent completing each job.[28] Accutrans also submitted a summary of the total number of hours Mr. Costanza worked for each customer.[29] According to Defendant, because Mr. Costanza did not work for an identifiable fleet, "[a]s a matter of law, Calvin Costanza is a longshoreman covered by the Longshore and Harbor Workers' Compensation Act, and is therefore ineligible for relief under the Jones Act."[30]

Plaintiffs dispute both of Defendants' arguments. As to Defendants' first argument, Plaintiffs argue Mr. Costanza had a substantial relationship to the vessels upon which he

---

[25] R. Doc. 12 at 8.
[26] *Id.*
[27] *Id.*
[28] R. doc. 12-1.
[29] R. Doc. 20-3.
[30] R. Doc. 12 at 8.

worked because he was exposed to the perils of sea. Specifically, the barges on which Mr. Costanza worked transported hazardous materials, requiring Mr. Costanza to have specialized training. "Due to the specialization in training and certifications Costanza received during the course of his employment and additional duties he took responsibility for while aboard the vessels, Costanza's work is not analogous to that of a traditional longshoreman who typically do not unload hazardous cargo from special purpose vessels, such as the barges serviced by Accutrans."[31]

Second, Plaintiffs contend "there were identifiable fleets of barges [Mr.] Costanza was assigned to by the defendant on a regular basis, many of which Costanza worked on multiple different occasions."[32] He alleges:

> [O]n the "WEB" barges for the customer Blessey Marine Services, Inc., Costanza worked on these barges 88 times, many of which he worked on multiple different occasions, for a total of 945.00 hours. Costanza worked on barges named "EMS" for customer Enterprise Marine Services, LLC on approximately 80 occasions for a total of 933.00 hours. Costanza also worked on barges named "GON" for customer, Lebeouf Towing, Inc., on 76 barges for a total of 863.00 hours. For Settoon Towing, Costanza worked on 59 barges named "SMI" for a total of 648.50 hours. For another customer, Genesis Marine, LLC, with barges named "GM" and "FMT", Costanza worked 55 barges for a total of 604.00 hours. For Florida Marine Transporters, Inc., Costanza worked on 39 barges named "FMT", for a total of 496.00 hours. And for Cenac Marine Services, LLC, with barges named "CTCO", Costanza worked on 15 barges for a total of 186.00 hours.

Plaintiffs submit "[t]hese groups of barges that Costanza performed work on a rotating basis represent an identifiable fleet of vessels under the common control of Accutrans" and that "these groups of barges were an identifiable fleet of vessels under the control of Accutrans when Costanza was present on the barges."[33]

---

[31] R. Doc. 16 at 13.
[32] R. Doc. 16 at 3.
[33] R. Doc. 16 at 3.

For the reasons that follow, the Court finds Mr. Costanza lacks a substantial connection to a particular vessel or fleet of vessels and thus does not qualify as a seaman under the Jones Act.[34]

1. *Identifiable group of vessels*

In its supplemental memorandum in opposition to Plaintiffs' motion to remand, Accutrans included a summary of the total number of hours Mr. Costanza worked for each customer and upon which vessels.[35] This summary revealed Mr. Costanza worked a total of 766 jobs, performing 8223.5 hours of work in his time with Accutrans. These hours were spent working on barges owned by 30 different companies. Although Mr. Costanza worked a large portion of these hours for four companies—(1) Blessey Marine Services, Inc.; (2) Enterprise Marine Services, LLC; (3) Hogman Barge Lines, LLC; and (4) Lebeouf Bros Towing, Inc.—Mr. Costanza spent no more than 11.58% of his time working for any one company. Plaintiffs do not dispute these facts, but rather argue Mr. Costanza may nevertheless be considered a Jones Act seaman, citing *Bertrand v. Internation Mooring & Marine, Inc.*,[36] and arguing that "in light of the purposes of the Jones Act, employers will not be allowed to deny Jones Act coverage to seamen by arrangements with third parties regarding a vessel's operation or by the manner in which work is assigned."[37] Essentially, because Accutrans had service agreements with third parties, Plaintiffs contend "these groups of barges were an identifiable fleet of vessels under the control of Accutrans when Costanza was present on the barges."[38]

---

[34] Because the Court finds Mr. Constanza did not have a relationship with an identifiable fleet of vessels, it does not address the issue of whether Mr. Constanza's connection to the vessels on which he worked was substantial.
[35] R. Doc. 20-3.
[36] 700 F.2d 240 (5th Cir. 1983).
[37] R. Doc. 16 at 12.
[38] R. Doc. 16 at 3.

In *Bertrand v. International Mooring Marine, Inc.*,[39] the plaintiffs were members of an anchor-handling crew employed by International Mooring and Marine. Plaintiffs brought suit under the Jones Act to recover for injuries suffered in a one-vehicle accident that occurred while they were returning from a job relocating a drilling rig. The district court granted summary judgment in favor of the employer. The district court found that, although the "anchor-handling crew was continuously subjected to the perils of the sea like blue water seaman and was engaged in classical seaman's work," they were not seaman as a matter of law, because the plaintiffs worked aboard numerous vessels which had no common ownership or control.[40] The Fifth Circuit reversed, holding that although the "employer neither own[ed] nor control[led] the several vessels upon which the seaman work[ed]," the plaintiff could still be considered a Jones Act Seaman.[41]

In reversing the district court, the Fifth Circuit noted that ninety percent of plaintiffs' work was performed aboard twenty-five vessels owned by various companies, and the remaining ten percent was spent preparing equipment for offshore vessel assignments.[42] The court noted that when assigned to a particular vessel, the crew ate and slept aboard the vessel,[43] and the plaintiffs' tours of duty with a vessel was for the duration of its mission.[44] Thus, "the mission of the vessel and the plaintiff's job were coextensive; when plaintiffs finished their responsibilities, the vessel's mission was completed."[45] Thus, the Fifth Circuit held reasonable persons could conclude the plaintiffs were Jones

---

[39] 700 F.2d 240 (5th Cir. 1983).
[40] *Bertrand v. Int'l Mooring & Marine, Inc.*, 517 F. Supp. 342, 347, 348 (W.D. La. 1981).
[41] 700 F.2d at 245.
[42] *Id.* at 247.
[43] *Id.*
[44] *Id.* at 248.
[45] *Id.* (internal citations, footnotes omitted).

Act seaman.[46] Markedly, however, the Fifth Circuit confined its holding to the facts of the case, noting the situation "should be contrasted with the situation in which the marine worker performs a particular specialized job that contributes toward the vessel's larger mission."[47]

Although *Bertrand* expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, the Fifth Circuit has since clarified in *Buras v. Commercial Testing & Engineering Co.*[48] that *Bertrand* cannot "fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time."[49] Essentially, *Bertrand* did not "reject[] the identifiable or recognizable fleet requirement established by our prior cases."[50]

Since *Buras*, the Fifth Circuit has continued to apply the "fleet rule" narrowly. In *Langston v. Schlumberger Offshore Services, Inc.*,[51] for example, the Fifth Circuit held the plaintiff, who performed thirty-two percent of her work on fifteen different vessels owned by ten unrelated owners, was not a seaman, as she did not have a sufficient connection to a vessel or group of vessels. In *Lirette v. N.L. Sperry Sun, Inc.*,[52] the Court held the plaintiff, "a wireline operator who performed one specialized job for many different vessels," did not fall within the *Bertrand* exception, because "he did not perform the traditional duties of a blue water seaman" and did not work aboard drilling rigs "for

---

[46] *Id.*
[47] *Id.* (internal citations, footnotes omitted).
[48] 736 F.2d 307 (5th Cir. 1984).
[49] *Id.* at 311–12.
[50] *Id.* at 312.
[51] 809 F.2d 1192 (5th Cir. 1987).
[52] 831 F.2d 554, 557 (5th Cir. 1987).

the duration of their mission." In *Ardleigh v. Schlumberger Ltd.*,[53] the Fifth Circuit held a wireline engineer was not a seaman, noting that although he worked aboard vessels seventy percent of the time, the plaintiff could "be classified as a seaman only if the thirty different vessels on which he worked constituted a 'fleet.'" Finally, in *Roberts v. Cardinal Services, Inc.*,[54] the Court found a plug and abandonment worker was not a seaman, noting "when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control,"[55] rejecting the opportunity "to depart from our well-established rule . . . that a worker who fails to show that at least 30 percent of his time is spent on vessels under the common ownership or control of his employer is precluded from recovering as a seaman under the Jones Act."[56]

In this case, it is undisputed that the vessels upon which Mr. Constanza worked did not fall under common ownership. In his time with Accutrans, Mr. Costanza worked a total of 766 jobs, performing 8223.5 hours of work. These hours were spent working on barges owned by 30 different companies; Mr. Costanza spent no more than 11.58% of his time working for any one company. Mr. Costanza did not sail with the vessels, was not a member of a vessel's crew, and did not work aboard the vessels for the duration of their missions. Rather, Mr. Costanza interacted with the vessels to perform a particular service. This is a "situation in which the marine worker performs a particular specialized job that

---

[53] 832 F.2d 933, 934 (5th Cir. 1987).
[54] 266 F.3d 368, 377 (5th Cir. 2001).
[55] *Id.*
[56] *Id.* at 378; *see also St. Romain v. Indus. Fabrication & Repair Svc., Inc.*, 203 F.3d 376, 379–80 (5th Cir. 2000) (stating that because the worker "did not work aboard vessels under common ownership or control," then he "[wa]s not a seaman" and that the Fifth Circuit's "decisions after *Bertrand* have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel or to an identifiable fleet of vessels")).

contributes toward the vessel's larger mission," and the *Bertrand* exception does not apply.[57]

Because Plaintiffs have failed to "show that at least 30 percent of [Mr. Costanza's] time was spent on vessels, every one of which was under his defendant-employer's common ownership or control,"[58] the Court finds "there is no possibility that plaintiff would be able to establish a cause of action" under the Jones Act.[59] Under 28 U.S.C. § 1441, a defendant may remove a case based on general maritime law, even in the absence of an independent grant of jurisdiction.[60] Remand is not warranted in this case.

Accordingly;

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand is hereby **DENIED**.[61]

New Orleans, Louisiana, this 24th day of October, 2017.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[57] 700 F.2d at 245.
[58] *Roberts*, 266 F.3d at 378.
[59] *Id.* (quoting *Lackey*, 990 F.2d at 207).
[60] *Provost v. Offshore Service Vessels, LLC*, No. 14-89, 2014 WL 2515412, at *2–5 (M.D. La. June 4, 2014); *Harrold v. Liberty Ins. Underwriters, Inc.*, No. 13-762, 2014 WL 688984, at *4 (M.D. La. Feb. 20, 2014) ("[T]he [2011] amendment to § 1441 allows removal of general maritime claims.").
[61] Plaintiffs' motion for sanctions is denied.